Our final case of the morning is Gunn v. Thrasher, Buyschmann & Voelkel. Mr. Edelman. Good morning, Your Honors. May it please the Court of Counsel. I represent Mr. and Mrs. Gunn. The Fair Debt Collection Practices Act prohibits at 1692b-4 the representation or implication that nonpayment of any debt... Mr. Edelman, I have a question for you about subject matter jurisdiction. And it's surely one that you have anticipated, because you've heard it before. The question is, how were your clients injured by the language in this letter? The clients received a threat specifically prohibited by the FDCPA. Yes. Look, I'm not asking whether in your view this violated the law. I'm asking how your clients were injured. It seems to me they could say, well, we paid a debt that we didn't owe, or this hurt our credit rating, or... I'm looking for an allegation of injury. They received a statement which was frightening and intimidating. The injury suffered here is the same injury that was suffered in Heredia v. Capital Management. You get a document which is meant to and does instill fear in that case of being reported to the Internal Revenue Service, here of foreclosure and loss of home when there was absolutely no intent to take such action. As you may know, there are some longstanding doctrines that say you can't recover damages for emotional injury alone, when that's all there is. Is that all there is? We do not claim monetary loss as a result. The guns did consult an attorney. They incurred time and expense doing that. But we do not claim that they paid something that they did not owe. We know they didn't do that because there was a later lawsuit for damages. Obviously, they didn't pay after they got the letter. A small claim was filed a couple of months afterwards. Was there any claim of injury to credit rating? No, Your Honor. I must say, given the recent precedence of this court, like Cosillas against Madison Avenue Associates, it's somewhat surprising to receive the briefs from parties in a case like this with nobody paying any attention to whether there is an Article III case or controversy. I will ask this question to Mr. Bowling as well, but perhaps we will need supplemental briefs. Very well, Your Honor. Cosillas involved a procedural issue. A 1692G notice was deficient. And there the court holds that if you don't intend to contest the debt or exercise your rights, it doesn't matter. Here, this is not a procedure. You have a substantive right to be free from misrepresentation and false threats and implications. And that is a right which Congress, we submit, may protect consumers against and impose statutory damages for not doing it. I think it is clear that there was no intent to foreclose. As Your Honor pointed out, a small claim was filed a couple of months later. There is a prerequisite lien filing before you can file a foreclosure on behalf of a homeowners association in Indiana. It was never made. We allege it was not intended, and we have been unable to find, and TBB does not claim that they ever filed a foreclosure on behalf of a homeowners or community association. Or that this association has ever filed such a case. Instead, they say that we didn't represent that we intended to file a foreclosure. We simply stated the law correctly, and in any event, the association could have decided at some later date to pursue such a remedy. The answer, I think, lies in the National Financial Services case from the Fourth Circuit, which involved almost identical facts. Small balance debts, large number of letters threatening suits. There they actually filed a few lawsuits so that they could say that they did that. The Court of Appeals had no difficulty stating that they were not performing a public service by informing people about the law. Their intent was to make debtors fear the threatened consequences, just like it was here. They held that there must be a particularized intention to sue a particular debtor if he or she does not pay. That was the standard also adopted by this court in the Heredia case. There the court held that Capital Management, the debt collector, had within its knowledge all the information it needs to know whether Discover Card, the client, would issue a Form 1099-C. It knew it wouldn't be issued in this particular case, and that was sufficient to state a claim. However, in Heredia, the 1099 form, I think the phrase was may be filed, correct, in that letter? That's correct. And in this case, the phrase was may seek to foreclose. So the word may was used in both cases. The fact that the statement was conditional does not vitiate its misleading nature. The Federal Trade Commission, which brought the national financial case to the Department of Justice, addressed this issue in its staff commentary and in light of its experience in determining what is misleading. And it states that a debt collector may state that certain action is possible only if it is frequently taken with respect to similar debts. But if the debt collector has reason to know facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading. Here, it's a small balance debt. The lien filing was not made. As far as we can determine, no history of filing foreclosures at all, and it's a very serious threat. It's a difference between a small claim seeking $2,000 and loss of one's home. Mr. Edelman, this is Judge Taney. I just want to clarify. Your claims stated various violations of different subsections of Section 1692E. Are you only pursuing subsection 4 for purposes of appeal? No, Your Honor. We're pursuing all of them, but 4 is the one most directly in point, since it specifically says that implication as well as flat representation is prohibited, and it specifically requires an affirmative intent on the part of the debt collector or the creditor to take the action. Congress recognized that statements about taking people's property and homes are particularly impactful and enacted the specific regulation of such statements. It's, I think, quite clear that TBV did not intend, nor did its client intend, to file a foreclosure, and we therefore ask that the judgment be reversed. If the court wishes briefs on the Article 3 issue, we would be happy to provide them. Thank you, Mr. Edelman. Mr. Bowling. Good morning. I rather should say, well, I get to do this still morning in Chicago. Good morning, Your Honor. May it please the court. The guns asked this court to issue a ruling that will incentivize debt collectors to provide less rather than more accurate information. That kind of a ruling would undermine rather than further the— Mr. Bowling. Mr. Bowling. Yes, Judge. Jurisdiction is the first issue in every case, and I'm a little surprised that you're going straight to the merits, having heard me raise that question in this case. I wish you would address it. Yes, certainly, Your Honor. I have to admit that it had not occurred to us that there could be an Article 3 issue here or an injury issue here, but I think the court's point is well taken. There may be a problem. I must say I am stunned that a lawyer representing a debt collector would not have run across recent Supreme Court cases on this issue and quite a number of recent decisions by the Seventh Circuit addressing this issue, including the one I mentioned, Casillas v. Madison Avenue Associates, which was issued just last year and was the subject of a Rule 40e circulation, which is our mini-en banc procedure. Claiming not to be cognizant of this is—well, it's hard to fathom. Well, yes, and I certainly take the court's point, Your Honor. We had not perceived there to be a Rule—I'm sorry, an Article 3 issue here. All right. But we are certainly happy to address it. It is clear we need to have the parties address it. We will direct the parties to file briefs addressing the question whether there is a case or controversy. Those briefs will be due in 14 days. Thank you, Your Honor. Thank you. Your Honor, turning to the merits, assuming that we have an Article 3 controversy here, there is no dispute whatsoever that the statement contained in the firm's letter to the guns was 100% accurate and truthful. That is, there is no dispute whatsoever that a homeowners association may seek foreclosure as a remedy under Indiana law if it has recorded a lien. In fact, the Indiana Code specifically provides for such a remedy at Section 32-28-14-8. The issue before the court, in terms of the merits of the case, is whether the law firm violated the Fair Debt Collection Practices Act by merely stating that its client may seek foreclosure. Under this court's settled case law, the clear answer is no. Mr. Bolling, this is Judge St. Eve. Would you agree that under this section of the Fair Debt Collection Practices Act, that if your client never intended to file foreclosure, that the plaintiffs have stated a claim, assuming there's standing in subject matter jurisdiction? Not in this case, Your Honor, no, for this reason. The law firm does not get to make the decision on its own as to whether foreclosure may be sought as a remedy. And even if it were the case, hypothetically, that at the time the letter was sent, that the homeowners association did not intend to seek foreclosure, that is a static, that is not a static concept. That is a fluid thing, just like solvency in the Dunbar v. Cone case. In other words, the client could decide later on that it does not seek that remedy. As we all know, at the initiation of the case, by intonation... Based on, at the time the representation is made, that it has to be lawful and the debt collector or creditor intends to take such an action, as opposed to might take it in the future. Because the test is whether the statement is false or misleading. And we know it's not false and it's not misleading because the debt collector, I'm sorry, the creditor could very well decide that it wants to, in fact, take that remedy. And in fact, as this court said in Heredia, I'm quoting, it is permissible for a creditor to make a may statement if there is any possibility that an event might happen. And Heredia, of course, is very different because there was no conceivable scenario in which a creditor would file a 1099-C with the IRS when it doesn't have to do it. So that was a very different set of facts. So Heredia, as the district court below observed, is a very different kind of case. In this case, it is entirely plausible that the homeowners association could choose to invoke a remedy that an Indiana statute specifically makes available. And I also want to point out that we're talking about a creditor that is a homeowners association, which is very different from the type of creditor we typically see in Fair Debt Collection Practices Act cases. This isn't a credit card company or a bank that, as the court said in Heredia, would be happy to receive any amount of money from a debtor and then be satisfied. That's not the case at all. A homeowners association expects to be paid. It has to be paid in order to function. It can't go on and do its function without regular payments of dues from its members. For this additional reason, the idea that the homeowners association may need to consider foreclosure in the future is inherently plausible. I also want to address appellants' discussion of the United States versus the National Financial Services case, which is not helpful to the appellants in this case because it's factually different. In that case, the debt collector stated, The attorney then stated, We don't have any representations like that in this case. A law firm never told the guns that foreclosure would occur if they didn't pay by a certain date. So NFS is a very different kind of case. I also want to talk about the guns allegation that the district court didn't credit its factual allegations. That's just incorrect. The district court did accept as true their well-pled factual allegations. What the district court didn't do, and which it wasn't required to do under Twombly or Rickball, is to accept conclusory allegations, such as that the homeowners association would never seek such a remedy as foreclosure, or that it would never be economical. Those are predictions about the future that the court is not required to accept as factual allegations. And the guns complaint that those allegations weren't accepted as factually correct are not well taken. Is there some source of information about how often condominium associations do file foreclosure actions? If there is, Your Honor, I'm unaware of it. It certainly wasn't pled by the guns in their original complaint or admitted complaint. There certainly was no such reference to a study in the complaint, but I would think providing information of this sort is more in the nature of a defense than of something you would want to be in a complaint. Well, I think it may, if we were actually going forward in a trial. The issue here is whether the guns even stated a complaint that could get over the Rule 12b6 or not. You do not address at trial whether a complaint is sufficient. Oh, absolutely. Correct. So, what we're trying to say here, Your Honor, is that because we're looking at, because the issue below the district court was the grant of the Rule 12b6 motion, that we look at what was pled by the guns. So, that's the focus here. And the district court, correctly, as it was required to do, credited the well-pled factual allegations, but did not credit their conclusory allegations. This case is actually much more... Thank you, Mr Bowling. Mr Adelman, you have about a minute and a half left. Very briefly. In Heredia, the allegation of lack of intent was identical to the allegation in this case. The quote from Heredia that counsel referenced deals with literal falsity. The court found that the statement was not literally false, but that referencing the action when it was not intended or authorized was misleading. Here, we have a specific statutory regulation of when you can say things about taking the debtor's property. With reference to whether the intent of the association can change, under Heredia, it is the obligation of the debt collector, particularly when they're regularly engaged in the collection of association debts, to determine what the intent was. The ultimate small claims was filed only a couple of months later, and there was nothing to cause their intent to change. With respect to whether the information is factually available, I understand that most Indiana counties now are on the Odyssey system. We were not able to find any instance in which this law firm filed a foreclosure for a homeowner's association or in which this association filed a case. And at no time in the briefing has the defendant claimed that... Mr. Adelman, your time has expired, but I will ask you the same question. Are there any data on how often homeowners' associations, in general, file foreclosure actions? That I am not aware of. It would be necessary to look up the particular attorneys and associations. Okay. Thank you very much. The case will be taken under advisement, and the court will be in recess.